On the fifteenth day of April 1869, the Honorable MARCUS MORTON, one of the justices of the superior court, was appointed a justice of this court, in place of Mr. Justice HOAR, resigned, and took his seat upon the bench on the nineteenth day of the same month at the term of the court then held at Boston in and for the county of Suffolk.

---

### COMMONWEALTH *vs.* NANCY B. MADAN.

On the trial of an indictment of a married woman for murder of A., the Commonwealth proved by the record of the court that, three months before the alleged homicide, a suit against the defendant for divorce on the ground of her adultery was begun by her husband and continued to a term subsequent to the time of the death. *Held,* that evidence was admissible, that, shortly before the beginning of the suit, the defendant declared that her husband would never get a bill of divorce against her, that she understood that A. was

Commonwealth *v.* Madan.

to be a witness against her, but he should not live to swear against her, for she would kill him first; and that afterwards, shortly before the alleged homicide, she said that she would have her revenge against all the witnesses who should testify against her in the divorce suit. *Held, also,* that evidence by the same record was immaterial and inadmissible, of the proceedings and final disposition of the suit for divorce, after the alleged homicide.

INDICTMENT against a married woman for the murder of Obadiah Jones by shooting him with a pistol on July 5, 1868. Trial in Norfolk, before *Gray, Wells, Ames* and *Morton,* JJ., who, after a verdict of guilty of murder in the first degree, allowed the following bill of exceptions:

" The Commonwealth proved, by the record of this court, that a libel for divorce, charging the defendant with adultery in 1866 and 1867, was filed on March 30, 1868, and continued to February term 1869. The defendant claimed a right to show, by the same record, the subsequent proceedings and termination of the suit. But the court ruled that the proceedings subsequent to the alleged homicide were immaterial and inadmissible. To this ruling no exception was taken.

" The Commonwealth was allowed to introduce testimony that in March 1868 the defendant said that she and her husband had had some trouble, but he would never get a bill of divorce against her; that she understood that Obed (the deceased) was to be a witness against her, but that he never should live to swear against her, for she would kill him first. To the admission of this testimony no exception was taken.

" The Commonwealth then offered testimony that, on another occasion, a short time before the death of Jones, the defendant said that she would have her revenge against all the witnesses who should testify against her in the divorce suit. This testimony was objected to by the defendant, but was admitted by the court, and to its admission the defendant alleged exceptions."

*G. W. Searle,* (*B. W. Harris & W. E. Jewell* with him,) for the defendant. 1. The evidence of threats should have been rejected. The result of the trial showed that this evidence was fatally damaging to the defendant, the main question being whether the death of Jones was homicidal or suicidal. This,

Commonwealth *v.* Madan.

therefore, is a case for the most stringent application of any principles of law which would justify its exclusion.

The general threats had no necessary application to Jones, nor any necessary reference to homicide. The special conversation in March 1868, in point of time relative to the suit for divorce, was when no such suit was pending; the libel was not filed till March 30, and was not served till after the end of March. And in point of time relative to the death of Jones, it was too distant from July 5 to be relevant, competent or safe.

It is no answer to these objections, to say that if such testimony is admitted, the court will instruct the jury as to its just application, and caution them against its abuse. It is against the danger of its admission at all, that the objections apply. The uncertainty as to any attention being given to the caution, and the absence of any power of revisal if the caution is contemned, do not derogate from the danger. All cautions from the bench are dangerous and uncertain experiments. If the threat is evidence at all, the jury have supreme control over it, and frequently will regard any caution as a judicial interference with their prerogative right as sole judges of the fact. To all just security of the accused, this rule should be rigorously applied : that the threat shall be so near in time that the court shall see affirmatively that it must have operated as a motive, and not so remote that it could not have had a bearing; and it must be in relation to the crime charged, and be an individual threat, that is, a threat directed towards and in relation to the deceased, not a general one towards all. A threat is but a circumstance, and its exclusion or admission, like other points of circumstantial proof, must be governed by rule. It is not every circumstance which is admissible to be weighed, but only such circumstances as are sufficiently proximate in time, and sufficiently relative to the main fact in issue, to afford a trustworthy basis of opinion. The only principle upon which threats in a capital case are admissible at all is, that they have a natural, necessary and direct tendency to prove guilt. This principle affords the sound rule both of admission and rejection ; to admit what by proximity of time, inculpation of person, and directness of words,

gives to the judicial mind assurance that it will aid the truth, without affording the slightest weight of prejudice.

2. The ruling as to the record was erroneous. The Commonwealth put in evidence of two facts by the record; the filing of the libel for divorce in March 1868, and the continuance of the suit to February term 1869. They thereby made the proceedings at that term competent. By offering the record at all, they made it competent in its entirety. *Kritzer* v. *Smith*, 21 Missouri, 296.

Nor were the proceedings in the suit, subsequent to the homicide, immaterial; but, on the contrary, vitally material, under the theory of the Commonwealth that the defendant had a motive to murder Jones in her apprehension of what testimony he might give therein as a witness. Whatever (without regard to its time, whether before or after the death of Jones) had the least tendency to qualify, weaken or explain away this pretended motive, was material and competent; and if the record showed that the suit was finally decided in her favor, then that portion of the record was some evidence that she had a good defence to the suit, and probably so knew and believed at the time when Jones died. The fact that Jones was dead when the suit was tried, and so did not testify therein, would not affect the materiality of such evidence of the result of the suit, if (as was the fact) the decision turned not on the adultery of Mrs. Madan, but on the concurring guilt of her husband. For analogous cases, see *Doonan* v. *Mitchell*, 26 Georgia, 472; *Scruggs* v. *Bibb*, 33 Alab. 481; *Walker* v. *Griggs*, 28 Georgia, 552; *Lester* v. *Sutton*, 7 Mich. 329; *Davies* v. *Flewellen*, 29 Georgia, 49.

*C. Allen*, Attorney General, for the Commonwealth.

CHAPMAN, C. J. The fact that a libel for divorce was pending, in favor of the prisoner's husband against her, was in itself immaterial. It became material merely because it explained the threats which she made against witnesses, by showing to what subject they had reference. For this purpose, the mere fact of its pendency, or contemplated pendency, was all that was pertinent. Its final disposition, after the murder, was not pertinent.

If the threats were made a short time before its commencement, but at a time when she expected it would be commenced, or while it was pending, they would tend to show her disposition towards the deceased, and a motive for destroying him. It would be the same if the threats included other persons, if they also included him. *Exceptions overruled.*