COMMONWEALTH *vs.* WALLACE W. HOLMES.

Hampden.    September 27, 1892. — October 20, 1892.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Homicide — Indictment — Evidence — Motion to quash — Variance.*

At the trial of an indictment for the murder of the defendant's wife, whose body was found buried in the cellar of the house occupied by them, evidence in detail of threats and acts of violence by the defendant towards his wife, extending over a period of nearly nine years, from shortly after their marriage to about the time of the homicide, with the exception of fifteen months, when they were living separately, is admissible for the purpose of showing a course of conduct on the defendant's part; and the question of the remoteness of the threats and acts is addressed to the discretion of the court.

It is no ground, at the close of the evidence in the case, for quashing an indictment in two counts, one of which charges the murder of a woman by blows and kicks on different parts of her body, and the other " in some way and manner, and by some means, instruments, and weapons, to the jurors unknown," that the indictment does not fully, formally, and sufficiently describe the offence, because the evidence discloses a possible cause of death, which must have been known to the grand jury, although there is no evidence as to what appeared before the grand jury.

An indictment, in two counts, for the murder of a woman, alleged in the first count that the murder was caused by blows and kicks upon different parts of her body, and in the second count " in some way and manner, and by some means, instruments, and weapons, to the jurors unknown." At the trial, the evidence disclosed a possible cause of death, but there was no evidence as to what appeared before the grand jury. The court refused to instruct the jury, as requested by the defendant, that there was a variance between the allegation of the second count and the evidence, and instructed them, in substance, that the allegation in the second count above quoted was a material allegation, as to which there need not be any affirmative evidence introduced; that if it did not appear whether or not the grand jury knew the way, manner, means, instrument, or weapon which was the effective cause of the death, the allegation of ignorance in the indictment would be sufficient; that when there was evidence bearing upon the question of the grand jury's knowledge, the burden was upon the government to establish beyond a reasonable doubt the grand jury's ignorance of the manner or cause of the death; that the question of such ignorance was one of fact for the jury to determine upon the evidence before them, that the test was not what the grand jury might have known by proper effort, but what they did in fact know; and that if the jury were satisfied upon the evidence, beyond a reasonable doubt, that the grand jury did not know the manner or cause of the death, the second count of the indictment was sufficient to sustain conviction, if its other allegations were also established. *Held,* that the defendant had no ground of exception.

An indictment, in two counts, for the murder of a woman, alleged in the first count that the murder was caused by blows and kicks upon different parts of her

body, and in the second count "in some way and manner, and by some means, instruments, and weapons, to the jurors unknown." At the trial, the physicians who performed the autopsy were allowed to testify to the presence of sand in the mouth, nostrils, and windpipe of the woman, whose body was found buried in the cellar of the house occupied by her, two months after her death. It did not appear for what purpose the evidence was admitted, or what use was made of it. *Held,* that its admission might be justified, as describing the condition of the body when found.

INDICTMENT, in two counts, for the murder of Nellie F. Holmes, the defendant's wife. The indictment was as follows:

" The jurors for said Commonwealth, on their oath, present that Wallace W. Holmes of Chicopee, in the county of Hampden, on the first day of September, in the year eighteen hundred and ninety-one, at Chicopee aforesaid, in the county of Hampden aforesaid, in and upon the body of one Nellie F. Holmes, feloniously, wilfully, and of his malice aforethought, did make an assault, and that the said Wallace W. Holmes then and there, with his hands and feet, the said Nellie F. Holmes, feloniously, wilfully, and of his malice aforethought, did strike, beat, and kick, in and upon the head, breast, back, belly, sides, and other parts of the body of the said Nellie F. Holmes; and did then and there feloniously, wilfully, and of his malice aforethought, cast and throw the said Nellie F. Holmes down unto and upon the floor and ground, with great force and violence, there giving unto the said Nellie F. Holmes, then and there, as. well as by the beating, striking, and kicking of the said Nellie F. Holmes, in manner and form aforesaid, as by the casting and throwing of the said Nellie F. Holmes down, as aforesaid, several mortal strokes, wounds, and bruises in and upon the head, breast, back, belly, sides, and other parts of the body of the said Nellie F. Holmes, of which said mortal strokes, wounds, and bruises the said Nellie F. Holmes then and there died. And so the jurors aforesaid, upon their oath aforesaid, do say that the said Wallace W. Holmes the said Nellie F. Holmes, in manner and form aforesaid, then and there, feloniously, wilfully, and of his malice aforethought, did kill and murder, against the peace of said Commonwealth, and contrary to the form of the statute in such case made and provided.

" And the jurors aforesaid, upon their oath aforesaid, do further present that the said Wallace W. Holmes, at Chicopee aforesaid,

in the county of Hampden aforesaid, on the first day of September, in the year eighteen hundred and ninety-one, in and upon one Nellie F. Holmes, feloniously, wilfully, and of his malice aforethought, did make an assault, and the said Nellie F. Holmes, in some way and manner, and by some means, instruments, and weapons, to the jurors unknown, did then and there feloniously, wilfully, and of his malice aforethought, deprive of life; so that the said Nellie F. Holmes then and there died; and so the jurors aforesaid, upon their oath aforesaid, do say that the said Wallace W. Holmes the said Nellie F. Holmes, in manner and by the means aforesaid, to them the said jurors unknown, then and there, feloniously, wilfully, and of his malice aforethought, did kill and murder, against the peace of said Commonwealth aforesaid, and contrary to the form of the statute in such case made and provided."

Trial in the Superior Court, before *Mason*, C. J., and *Dewey* and *Hopkins*, JJ., who allowed a bill of exceptions, in substance as follows.

The government called as a witness Mary J. York, who testified that the defendant and Nellie F. Holmes were married in July, 1882, and that the last time she ever saw either of them was nine years ago, and offered to prove by her certain threats made by the defendant against Nellie F. Holmes, and also certain ill treatment of her by him, all of which, both ill treatment and threats, were in and prior to May, 1883, but after their marriage. This evidence was admitted, against the defendant's objection; and the defendant excepted. The government further offered to prove, by one Charles S. Kenyon, a son of Nellie F. Holmes by a former marriage, certain ill treatment and threats at various times and places, the last of which were about three years before the alleged murder. The defendant objected to the admission of this testimony, but the court ruled that "for the purpose of showing continuous bad treatment, the court would allow evidence of any such treatment after marriage"; and the defendant excepted.

Kenyon then testified that the defendant threatened to kill Nellie F. Holmes in Montreal, in the year 1888, and also testified to threats of a like nature made previously to this, at various times from 1882 down to 1888, in Pawtucket, R. I., and in Albany

and Binghamton, N. Y.; that in Albany the defendant held Nellie F. Holmes by the throat on the floor, and with a knife in his hand threatened to cut her throat; that in Binghamton the defendant came home with two revolvers and chased her from the house; that the witness often saw the defendant strike and ill use her at different places where they lived; and that all of this occurred more than three years preceding the alleged murder.

Fred E. Crandall testified that five years and a half ago, while living in Providence, R. I., he heard the defendant threaten the life of Nellie F. Holmes; that he saw the defendant, at that time and place, also strike her; and that, four years and a half ago, at the same place, the defendant threatened to break her back and to kill her.

Ellen Crandall testified that in Pawtucket, five years ago, she heard the defendant threaten to kill Nellie F. Holmes; and the witness also testified to the defendant making further threats thereafter, at Providence, to kill Nellie F. Holmes, and hack her to pieces; that the witness saw the defendant, at the same time and place, strike and choke Nellie F. Holmes; that on another occasion, at the same place, and about the same time, the witness saw the defendant holding Nellie F. Holmes by the throat, with a pistol in his hands pointed at her head; that the defendant was also kicking her, and threatening to kill her; that she saw the defendant, about four years before the time of the alleged murder, in Montreal, kick Nellie F. Holmes so that she fell on the floor, and also at the same place she saw the defendant take her by the hair of the head, drag her off the bed on to the floor, and choke her. It appeared that, after living in Montreal, the defendant and his wife were separated for about fifteen months; that they then lived together for a time in Holyoke, and moved to Chicopee in the winter of 1890–91.

The government also offered the evidence of eleven other witnesses to threats of the defendant against the life of his wife, and to acts of violence by him upon her, in July and August, 1891; that on August 14, 1891, the defendant, in conversation with one Haskell, said that he was leaving off drinking and was going to be a better man, and said, " You know that my wife sued me for non-support." The witness said that he did not

know it. " Well," said the defendant, " I want to have you remember one thing, she 'll never live to see that day come off."

One Nash also testified that, in the same conversation, the defendant said, " The woman would never live to see the day she would get it." The government had previously introduced evidence that Mrs. Holmes had begun a proceeding for separate maintenance in August, 1891.

The body of Mrs. Holmes was found on November 3, 1891, buried in the cellar of the house which the defendant and his wife occupied down to the time of her disappearance, on September 1, 1891.

The government offered to prove by Dr. L. M. Tuttle, who was medical examiner of Holyoke and who made the autopsy, that certain sand or dust was found in the windpipe of Nellie F. Holmes at the time of the autopsy; that the mouth and nostrils were filled with sand, which sand in the windpipe must have been inhaled either during life or by artificial respiration; that the sand in the mouth very nearly filled the mouth; that it was crowded right in, and the mouth was open; and that it might have got in by sand being thrust into the mouth. The defendant objected to the admission of this evidence, but the court admitted it; and the defendant excepted.

Similar evidence as to dust and sand in Mrs. Holmes's throat was given in detail by the four physicians who took part in the autopsy. No witness testified whether he was before the grand jury, or as to what appeared before the grand jury. There was also evidence, on the part of all the physicians, that the cause of the death could not be positively stated, from the appearance and their examinations of the body, which was much decomposed when found, but they all testified that a quantity of clotted blood was found in the lower left side of the abdomen, which resulted from a rupture of blood-vessels during life, and which might have been the result of violence, and have caused the death. There was also other evidence against the defendant.

At the close of the evidence, the defendant moved that the indictment be quashed, on the ground that, at the time the indictment was drawn, the grand jury knew of the possible cause of death; that the defendant had been brought to trial without notice that this evidence was to be produced; and

that he had not been fully, formally, and sufficiently informed of the charge. The court overruled the motion; and the defendant excepted.

The defendant asked the court to instruct the jury as follows:

" 1. Upon the evidence, the jury must be satisfied beyond a reasonable doubt that Nellie F. Holmes was killed by a kick, blow, or in other ways, as set out in the first count of the indictment, or they must return a verdict of not guilty. 2. The jury, upon the evidence, must return a verdict of not guilty. 3. There is a variance between the allegations of the second count and the evidence, and for that reason the jury must return a verdict of not guilty."

The court refused to give the instructions asked for, and instructed the jury upon these points, in substance, as follows:

" The proof must conform to the allegations. If all the material allegations in either of the two counts are proved beyond a reasonable doubt, there must be a verdict of guilty. If all the allegations upon the one count, or upon the other, that are material to some crime set out in the indictment are not established beyond a reasonable doubt, there must be a verdict of not guilty. In the second count one of the allegations is that the way and manner, the means, instrument, and weapon, by which the deceased was deprived of life, were to the grand jurors unknown. That is a material allegation. It is an allegation as to which it has been repeatedly held there need not be any affirmative evidence introduced; if nothing appears with reference to the question whether the grand jury knew or did not know the way and manner, means, instrument, or weapon, that was the effective cause of the death of the deceased, the allegation of ignorance in the indictment itself would be sufficient. But when there is evidence bearing upon that question, whether the grand jury knew or did not know, the burden is upon the government to establish beyond a reasonable doubt that the grand jury did not know the way and manner, or the means, instrument, or weapon, by which the deceased was deprived of life. . . . This is a question of fact for you to determine upon the evidence, whether the allegation in that count is sustained by the evidence before you, that the grand jury did not know. You are to keep in mind that the test is not what the grand jury might have known by proper

effort, but what they did in fact know. So far as the means of information shown to have been before them helps you to determine what they did in fact know, so far it can be considered. But the test is, did the grand jury in fact know in what way and manner, by what means, instrument, or weapon, Nellie F. Holmes was deprived of life. If you are satisfied upon the evidence, beyond a reasonable doubt, that they did not know, then the second count of this indictment is sufficient to sustain conviction, if its other allegations are also established.

" In the first count there is the allegation of the use of a great variety of means in perpetrating the crime. To sustain a conviction under that count, or to prove the allegations of that count, it is not necessary to prove that all the means set out in that count were in fact used, or were in fact effective in causing death. It is sufficient that it be proved that death resulted from some one of them, or any of them combined. After what has been said upon the allegation of ignorance in the second count, it cannot be very material whether the government sustains this charge as it is set out in the first count or as set out in the second count. If the jury should be in doubt upon the allegation in the second count, then there could be a conviction only in case the government has proved the allegation in the first count. But if you are satisfied, upon the evidence, that at the time when the indictment was found the grand jury did not know which of the means caused the death, then it would be quite immaterial whether the government succeed in making it certain that death followed in the manner set out in the first count, or as set out in the second count."

The jury returned a verdict of guilty of murder in the first degree; and the defendant alleged exceptions.

*A. L. Green,* (*M. F. Druce* with him,) for the defendant.

*A. E. Pillsbury,* Attorney General, for the Commonwealth.

MORTON, J. The only exception which has been argued to us is that relating to the admissibility of evidence introduced by the government as to threats and acts of violence on the part of the defendant towards his wife, from shortly after their marriage down, or nearly down, to the time of the alleged homicide. The evidence tended to show that these acts and threats occurred with more or less frequency during all that time, with the exception

of about fifteen months in 1888 and 1889, when they were separated, and of a few months, though just how many did not appear, after they lived together again. We think that the evidence was clearly admissible in connection with the other circumstances. It tended to show a settled ill-will and malice on the part of the defendant towards his wife, and therefore bore directly on the question whether there was any motive for him to commit the crime. It was not admitted for the purpose of showing separate and independent acts and threats, but for the purpose of showing a course of conduct. It was unavoidable that, in showing the cause of the defendant's conduct, evidence of his acts and threats should be introduced. His course of conduct could not be shown so satisfactorily in any other way. *Commonwealth* v. *Goodwin*, 14 Gray, 55. *Commonwealth* v. *Madan*, 102 Mass. 1. *Commonwealth* v. *Bradford*, 126 Mass. 42. *Commonwealth* v. *Abbott*, 130 Mass. 472. *Commonwealth* v. *Ryan*, 134 Mass. 223. *Commonwealth* v. *Quinn*, 150 Mass. 401. *State* v. *Rash*, 12 Ired. 382. *Cluck* v. *State*, 40 Ind. 263, 270. *Mimms* v. *State*, 16 Ohio St. 221. *Sharp* v. *People*, 29 Ill. 464. *Thrasher* v. *State*, 3 Tex. App. 281.

The question of the remoteness of the acts and threats was for the court in the exercise of its discretion, and we see nothing to indicate that the discretion was exercised erroneously. *Commonwealth* v. *Goodwin*, *Commonwealth* v. *Bradford*, *Commonwealth* v. *Abbott*, *Commonwealth* v. *Ryan*, and *Commonwealth* v. *Quinn*, *ubi supra*. The separation of fifteen months would tend to indicate, if anything, a continuance of ill feeling on the defendant's part towards his wife, and there is nothing to show on what terms they began to live together again. Even if there had been a reconciliation, that, followed as it was by a resumption by the defendant of his threats and acts of violence, would not render evidence of former acts and threats inadmissible, (*Robbins* v. *Robbins*, 100 Mass. 150,) and these taken in connection with the subsequent acts and threats tended to show a substantially continuous course of such conduct.

The motion to quash on the ground that the grand jury knew of the cause of death, and that the indictment did not fully, formally, and sufficiently describe it, was rightly denied. In addition to *Commonwealth* v. *Webster*, 5 Cush. 295, the latter

question has been recently considered in *Commonwealth* v. *Coy*, *ante*, 200.

There was no evidence as to what appeared before the grand jury, and the instructions of the court as to the averment in the second count in the indictment, that the defendant killed his wife in a manner and by means to the grand jurors unknown, were on that account sufficiently favorable to him.

It does not appear for what purpose the evidence as to the presence of sand in the mouth, nostrils, and windpipe was admitted, or what use was made of it. It might have been admitted properly for either one of several reasons. It is enough to say that its admission may be justified, as describing the condition of the body when found. *Commonwealth* v. *Brown*, 14 Gray, 419, 431.                              *Exceptions overruled.*