Mr. Justice Yaw Orsdel
delivered the opinion of the Court r.
Appellant, Mattie Lomax, was convicted in the supreme court of the District of Columbia of the crime of murder in the first degree. A judgment upon the verdict sentencing her to be executed was duly entered. No objection was made or exception taken either to the sufficiency of the evidence to support the verdict, or to the charge of the court to the jury. However, in the absence of an assignment of error, it was insisted at bar by counsel for appellant that, inasmuch as the evidence at best es *416 tablished only the crime of manslaughter, and the court, by its instructions, permitted the jury to consider the evidence with reference to the guilt of the accused of the crime of murder in The first and second degrees, we should, of our own motion, find the instructions erroneous in that particular. We have reviewed the evidence carefully as disclosed by the record, and find it sufficient to support the verdict of the jury; hence this contention will be dismissed.
This brings us to the specific assignments of error. The first two relate to the admission in evidence on behalf of the prosecution, of statements made to the police officers by the accused while under arrest and shortly after the homicide occurred. It is conceded, and the record so discloses, that the statements were made without any threats or offers of reward •or immunity on the part of the officers. The law is well settled that statements or confessions made under such circumstances may be properly admitted on trial as evidence against the accused. In Bram v. United States, 168 U. S. 532, 42 L. ed. 568, 18 Sup. Ct. Rep. 183, 10 Am. Crim. Rep. 547, the court announced the following rule relative to confessions made to police officers: “In this court also it has been settled that the mere fact that the confession is made to a police officer while the .accused was under arrest, in or out of prison, or was drawn out by his questions, does not necessarily render the confession involuntary ; but, as one of the circumstances, such imprisonment •or interrogation may be taken into account when determining whether or not the statements of the prisoner were voluntary.” In Wilson v. United States, 162 U. S. 613, 40 L. ed. 1090, 16 Sup. Ct. Rep. 895, it was held that such confessions were not only admissible, but that the officer was not required to warn the accused of his rights in the premises. The statements in this instance were made to the officers while the accused was in their ■custody, at the police station and on a street car, and without any warning from them as to her rights. These circumstances were proper for the consideration of the jury in determining whether the statements were voluntarily made. The evidence was clearly admissible for that purpose, and it was entitled to *417 such weight as the jury might deem it to be entitled, when, from a consideration of all the circumstances, they should find that it was the voluntary act of the accused.
The third assignment of error relates to evidence of threats made by the accused against her husband, the deceased, about nine months before the homicide occurred. This was only one of numerous threats made by the accused that she would kill her husband. Her threats continued down to her conversation with the last living witness with whom she communicated on the night of the homicide. Wide latitude is allowed the prosecution in criminal trials in ascertaining the motive that actuates the commission of crime. McUin v. United States, 17 App. D. C. 323. In Com. v. Holmes, 157 Mass. 233, 34 Am. St. Rep. 270, 32 N. E. 6, evidence of threats and violence by the accused toward his wife extending over a period of nine years was admitted. The court, upholding the ruling, said: “We think that the evidence was clearly admissible in connection with the other circumstances. It tended to show a settled ill-will and malice on the part of the defendant towards his wife, and therefore bore directly on the question whether there was any motive for him to commit the crime.” The length of time intervening between the threat and the criminal act is only important in determining the probative force to be given such evidence. Remote threats may be as indicative of motive as those made immediately preceding the commission of the crime, and especially is this true, as in the present case, where the threat was accompanied by the attempt to use a deadly weapon, and where there is evidence to show that the threats were repeated throughout the intervening period between the time in question and the commission of the crime. It is frequently the case that threats made by the accused, and the conduct accompanying the making of the threats, furnish the best evidence of motive for the commission of the crime.
The next assignment of error relates to the refusal of the court to admit the evidence of a witness offered on behalf of the defense to prove the reputation of the accused for peace and good order in the State of Virginia at a point 150 miles distant from *418 this city. Appellant testified that she had not lived there for fourteen years. The witness offered testified that she visited at his house about a month each year, and upon this it was sought to establish her reputation for peace and good order in that community. Evidence as to reputation must be confined to that existing in the community in which the person resides at and shortly preceding 'the occurrence of the event with reference to which the evidence is sought to be adduced. This witness did not pretend to have any knowledge of the reputation of the accused in Washington, where she had resided for fourteen years, but undertook to testify as to her reputation at a point 150 miles distant, and from his personal observation alone of defendant’s conduct while she was visiting at his place about one month each year. The long residence of the accused in this city required that any evidence as to her reputation for peace and good order should come from the lips of witnesses familiar with her reputation in the community in which she resided either shortly before or at the time of the commission of the crime, and not in a neighboring State where she annually visited. “The witness to reputation must be one who, by residence in the community or otherwise, has had an opportunity to learn the community’s estimate ; and the preliminary inquiry, whether he knows the person’s reputation, is usually insisted upon. A person who lives out of the neighborhood is therefore not qualified.” 1 Greenl. Ev. 16th ed. sec. 46 1d.
The next assignment of error relates to the refusal of the court to admit the testimony of a physician who was called by the defense to testify that on one occasion about a year prior to the homicide he was called to attend the accused who was suffering from bruises and injuries which she stated at the time were inflicted by her husband, and that this statement of the accused was not denied by the husband. There is nothing to show that the husband expressly admitted the truth of his wife’s statement. The testimony, therefore, would be purely hearsay. If it was even held that the husband’s silence was equivalent to an implied admission, as argued by counsel for appellant, it would still be inadmissible, sinee the husband is in no sense a *419 party to this action. Lucas v. United States, 163 U. S. 612, 41 L. ed. 282, 16 Sup. Ct. Rep. 1168.
The last assignment of error is based upon certain language used in the argument to the jury by the assistant United States attorney. The evidence disclosed that the homicide was committed about 6 o’clock in the morning, in the rear room of the second floor of the house where the deceased was lodging. A witness for the prosecution, who was sleeping in the front room on the same floor, was aroused by the sound of someone falling. She went along the hall to the room of the deceased, and while outside of the door heard the accused say, “I told you I would get you.” The witness returned to her room, and was followed by the accused, who demanded admission. Witness threatened to call an officer, when the accused said, “You will open this door now, or you will open it later. I know that I will be arrested.” In the course of the argument, counsel for the government used the following language, to which exception was taken: “She says that when she extricated herself from him that she went right from the house; but what did she do % .Forthwith she went to the room of Miss Burroughs, the woman who had heard her words, the woman who knew she was there, and demanded with a curse, admission, and when refused, when the police call was threatened, the answer came back, £Oh, the police will get me; the police will get me, but if you don’t open that door, you will later;’ and thanks to that lock Miss Burroughs is here now, but if it had not been for it, she perhaps would have shared the fate of the husband.” While the rule requiring officers of the government in the prosecution of criminal cases, to refrain from prejudicial remarks to the jury not warranted by the evidence,, is a very strict one, we are not convinced that the above remark comes within the rule. A prosecuting officer is at liberty to form his own theory of a case, and to pursue it in the course and manner of the trial, so long as the theory is consistent with the evidence. • Here the evidence was circumstantial. It was the theory of the. prosecution, and the one undoubtedly adopted by the jury, that the accused went to the house where the crime was committed in a state of mind fixed upon murder. She had *420 been discovered by the witness in the ball, and when sbe pursued the witness to ber room and demanded admittance, it is a reasonable inference, or an admissible one at least, tbat bad sbe gained admission sbe would bave done violence to the only witness wbo bad discovered ber at the scene of the murder.
It will be observed tbat many of the assignments are trivial, and would not bave been discussed in this opinion except for the serious consequences to the accused of an affirmance of the judgment.
the judgment is affirmed. Affirmed.