COMMONWEALTH *vs.* STANLEY ZELENSKI.

Hampden.     May 21, 1934. — June 25, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Evidence,* Admissions and confessions. *Insane Person. Witness. Homicide.*

An insane person is not necessarily an incompetent witness.

At the trial of an indictment for murder, testimony as to a confession and admissions made by the defendant freely and without inducement, fear of harm or hope of leniency, properly was admitted notwithstanding the circumstances, shown by uncontradicted testimony by medical experts, that at the time when the defendant made such confession and admissions he was a defective delinquent, that his mental condition could not be cured, that he "was a dangerous and irresponsible type of feeble-mindedness," and that he was not entirely capable, or not capable in a normal way, of appreciating the distinction between right and wrong as to the acts which he committed: the experts' testimony did not show that the mental infirmities of the defendant deprived him of the faculty of consciousness of the acts done by him, of the power to retain them in his memory and of the capacity to make a statement of those acts with reasonable accuracy, nor warrant a ruling that such confession and admissions were utterly unreliable as a recital of what he did.

The rule, that, in order to support a verdict of guilty at the trial of an

indictment for homicide, there must be adequate proof of the *corpus delicti* without resort to admissions or confessions by the defendant, does not prevail in this Commonwealth,

Where, at the trial of an indictment for murder, there was evidence of a full and unequivocal confession and admissions by the defendant to the effect that he killed the decedent and threw the body into a nearby river, and circumstantial testimony by disinterested witnesses which corroborated in important particulars such confession and admissions, it was proper to refuse to order a verdict of not guilty, although the evidence with respect to the *corpus delicti* showed at most that the decedent's body never was found, that from the river there were recovered a boot worn by the decedent at the time in question and a piece of material similar to that which, according to other evidence, covered a long and heavy object which the defendant was seen to have carried to and thrown into the river at such time, and that at the defendant's house at such time there was found a club on which was a spot resembling blood and a bit of hair of a color like that of the decedent's hair.

INDICTMENT, found and returned on May 8, 1924, charging the defendant with murder.

The indictment was tried in the Superior Court before *Brown*, J. Material evidence and exceptions saved by the defendant are described in the opinion. There was a verdict of not guilty by reason of insanity. The defendant filed an appeal with assignments of error.

The case was submitted on briefs.

*T. C. Maher*, for the defendant.

*T. F. Moriarty*, District Attorney, & *J. F. Kelly*, Assistant District Attorney, for the Commonwealth.

RUGG, C.J. The defendant was indicted for murder in 1924. In March of the following year he was committed to the Bridgewater State Hospital for observation and treatment as to his mental condition; he was returned for trial in March of the current year. See G. L. (Ter. Ed.) c. 123, §§ 100, 100A, 105; *Commonwealth v. Spencer*, 212 Mass. 438; *Commonwealth v. Vallarelli*, 273 Mass. 240.

There was evidence tending to show that between eight and nine o'clock on the morning of April 2, 1924, after a heavy fall of snow, a girl about fourteen years old, wearing her elder brother's rubber boots, left her home in a suburb of the city of Chicopee to deliver milk, as was her custom, to a neighbor living on another street. She delivered the

milk and left in the direction of her home on a way leading past the house of the defendant. She was never seen afterwards, except that a brother of the defendant stated in the presence of the defendant on the evening of that day that on his way to school that morning he saw her "coming back" toward the home of the defendant. About ten o'clock on that morning the defendant was seen dragging a toboggan, on which was a long object covered with burlap or an old rug, from his home toward the Connecticut River, distant about a quarter of a mile. One witness who talked with him "heard a little light voice . . . not loud enough to understand" coming from the bundle on the toboggan; the defendant sat right down on the object and kept hitting it with his hand; on being asked what he had, the defendant replied that he had "some cats he was going to drown"; another witness saw him sitting on the front of the toboggan and then get up and kick whatever he had underneath the covering and then go on toward the river. Still another witness on the same morning saw the defendant in a boat coming up the river and he stood up in the boat and "took something . . . in his two hands . . . and . . . threw it splash in the water, something heavy, a piece of carpet, I don't know what. After that he sit in the boat." The girl was missed from her home. Later in the day a search was made and she was traced by the footprints of the rubber boots to the house of the defendant. The defendant was asked if he had seen the girl and he made no reply. The toboggan track led from the house of the defendant to the river. The river later was dragged and dynamited. One of the rubber boots worn by the girl on the last morning she was seen and a rug or piece of carpet were recovered from the river. Police officers visited the home of the defendant on the evening of April 2, 1924, or on the next day, and found there in the cellar under some wood a space about five feet long, two feet wide and three feet deep, where the earth appeared to have been recently dug and refilled, and two clubs on one of which was a spot that looked like blood and a bit of light hair. The hair of the girl was light in color. There was uncontradicted evidence from qualified

medical experts that upon examinations made after April in 1924 and in 1925 the defendant was in their opinion a defective delinquent, that his mental condition could not be cured, that he "was a dangerous and irresponsible type of feeble-mindedness," that he was not entirely capable, or not capable in a normal way, of appreciating the distinction between right and wrong as to the act which he committed.

Testimony was also admitted subject to the exception of the defendant, from two police officers, of a full narration made by the defendant on the next day after the disappearance of the girl, and perhaps also on a later day, of his conduct toward her on that date. This narration was a confession with admission of many details by the defendant (*Commonwealth* v. *Haywood*, 247 Mass. 16, 18) that he took her life and threw the body into the river from his boat.

At the conclusion of the evidence the counsel for the defendant asked that a verdict of not guilty be directed. He made no request for instructions and made no argument to the jury. The district attorney did not argue for a verdict of guilty but argued for a verdict of not guilty by reason of insanity. That verdict was returned. See G. L. (Ter. Ed.) c. 123, § 101.

The case comes before us upon appeal in accordance with the procedure established by St. 1925, c. 279, as amended by St. 1926, c. 329, now embodied in G. L. (Ter. Ed.) c. 278, §§ 33A–33G. The defendant took exceptions and filed assignments of error. Only questions of law thus presented are before this court for consideration. *Commonwealth* v. *McDonald*, 264 Mass. 324, 336.

There was no error in the admission of testimony as to the confession and admissions made by the defendant. It rightly has not been contended that this narration by the defendant of his connection with the crime with which he was charged in the indictment was not freely made, without compulsion, fear of harm or hope of leniency. No inducements were held out to him to make it. *Commonwealth* v. *Szczepanek*, 235 Mass. 411, 414. *Commonwealth* v. *Soaris*, 275 Mass. 291, 298.

This testimony was not rendered inadmissible by the

mental condition of the defendant. The medical evidence falls far short of proving that the mental infirmities of the defendant deprived him of the faculty of consciousness of the physical acts performed by him, of the power to retain them in his memory, and of the capacity to make a statement of those acts with reasonable accuracy. An insane person is not necessarily an incompetent witness. *Kendall* v. *May*, 10 Allen, 59, 64. *District of Columbia* v. *Armes*, 107 U. S. 519. A confession made by a defendant more or less under the influence of intoxicating liquor is not inadmissible as evidence unless the degree of intoxication is so great as to deprive him of understanding what he was confessing. *Commonwealth* v. *Howe*, 9 Gray, 110, 112. In refusing to sustain an argument that testimony was inadmissible of conversations with a defendant recently recovered from a fit of delirium tremens, it was said by the court speaking through Holmes, C.J., in *Commonwealth* v. *Chance*, 174 Mass. 245, 249: "We have no disposition to make the rule of exclusion stricter than it is under our decisions. It goes to the verge of good sense, at least." The rule prevailing in other jurisdictions is that confessions made by defendants of more or less mental instability arising from intoxication or insanity are admissible in evidence. *State* v. *Feltes*, 51 Iowa, 495, 497. *State* v. *Berberick*, 38 Mont. 423, 442–448. *State* v. *Church*, 199 Mo. 605, 632–634.

The testimony of the alienists as to the mental and moral deficiencies of the defendant did not warrant a ruling that his confession and admissions were utterly unreliable as a recital of what he did with respect to the homicide. They were rightly received in evidence. Their weight was for the jury. Two of the assignments of error relate to the admission of this evidence.

There was no error in the denial of the request of the defendant for a directed verdict of not guilty. The remaining assignments of error relate to this point in various forms of words. The evidence of admissions by the defendant as to his commission of the homicide was direct and unequivocal. These admissions were corroborated in important particulars by evidence of the circumstances of

the disappearance of the girl shown by disinterested witnesses, which has already been recited in substance. The rule does not prevail in this Commonwealth that, in order to support a verdict of guilty, there must be adequate proof of the *corpus delicti* without resort to admissions or confessions by the defendant. Conceding, although not deciding, that apart from the testimony as to the confession and admissions of the defendant there was not sufficient evidence of the *corpus delicti*, a verdict of not guilty could not rightly have been directed. All the testimony, both as to the circumstances of the disappearance of the girl and as to the confession of the defendant, was before the jury for their consideration in reaching a conclusion whether he committed the homicide. As was said in *Commonwealth* v. *Williams*, 171 Mass. 461, 462, "even upon an indictment for murder, the evidence of the death as well as of every other material fact may be insufficient singly, and yet the evidence taken as a whole may leave no reasonable doubt of the crime or of the defendant's guilt. The facts in a circle support one another, when if any one were withdrawn they all would fall to the ground." The *corpus delicti* need not be proved by evidence independent of the confession of the defendant. The question for the jury in every case is whether on all the evidence, including both the confession and the corroborating facts, there is proof sufficient to satisfy the jury with the requisite degree of certainty of the commission by the defendant of the act charged in the indictment. *Commonwealth* v. *Killion*, 194 Mass. 153, where earlier cases are collected. *Commonwealth* v. *Sanborn*, 116 Mass. 61. See also *Commonwealth* v. *Leventhal*, 236 Mass. 516, 521–522, and *Dillon* v. *Dillon*, 281 Mass. 423, 425. Cases from other jurisdictions reaching a contrary result need not be reviewed.

The conclusion is that the exceptions and assignments of error show no ground for setting aside the verdict. There was no error in the admission of evidence. There was ample warrant for the verdict returned.

*Judgment on the verdict.*