RICHARD R. SHERBURNE *vs.* JOHN PAULDING MEADE.

Suffolk.     April 6, 1939. — June 26, 1939.

Present: FIELD, C.J., DONAHUE, COX, & RONAN, JJ.

*Deceit.   Evidence*, Relevancy, Of value.   *Corporation*, Stockholder.

The plaintiff in an action of tort for deceit in the sale of corporate stock
was not as a matter of law barred from recovery merely by the fact
that, upon being furnished by the defendant, who was president and
treasurer of the corporation and the holder of more than two thirds
of its outstanding stock, with what purported to be a balance sheet
of the corporation showing on its face a substantial surplus, he did
not make inquiry as to the details making up the items when such
inquiry might have disclosed the unreliability of the balance sheet.

Evidence, in an action of tort for deceit, of false representations of facts
bearing upon the value of stock of a corporation made by the defend-
ant, who was its president, treasurer and the owner of more than two
thirds of its outstanding stock, to induce a purchase by the plaintiff,
of the plaintiff's innocent reliance thereon and of his loss warranted
a finding for the plaintiff.

In the circumstances, certain evidence was admissible to prove the falsity
of representations as to the value of the stock of a corporation on
a certain date although it included details as to the financial condi-
tion of the corporation and its operations for a period of two or three
years after the date of the representations.

The mere fact that stock purchased and paid for was not delivered to
the purchaser until after a certain meeting of the stockholders did not
deprive the purchaser of rights as a stockholder at the meeting where
it appeared that the stock was in the corporation's possession as
treasury stock and available for delivery, that he was regarded and
treated as a stockholder by those in charge of the corporation and
that he had demanded delivery.

TORT.   Writ in the Superior Court dated November 21,
1933.

Before *Sheehan*, J., there was a verdict for the plaintiff in
the sum of $5,000.

*E. S. Farmer*, for the defendant.

*A. J. Lloyd*, (*J. C. Kane* with him,) for the plaintiff.

RONAN, J.   In this action of tort for deceit, the plaintiff
seeks to recover damages arising out of the purchase of
shares of the capital stock of John Paulding Meade Com-

pany, which, he alleges, he was induced. to purchase by the fraudulent misrepresentations of the defendant. There was a verdict for the plaintiff. The case is here upon exceptions to the refusal of the judge to direct a verdict for the defendant, to the admission of evidence, to the refusal to grant certain requests for rulings, and to portions of the charge.

There was evidence that the plaintiff, then employed by a surety company, was anxious to become associated with John Paulding Meade Company (hereinafter referred to as the company) and to establish there and conduct a surety department. The company, which had been incorporated in 1921 to take over the business conducted by a partnership of which the defendant was a member, maintained an insurance agency, representing fifteen companies. It secured practically all its business through its officers, employees, stockholders or brokers, to whom a commission was credited when the premium was paid. The company received a contingent commission which amounted to about one third of the broker's commission. In September, 1930, the parties met and the defendant told the plaintiff that the company was "looking for new blood"; that it had been making money and "was doing a nice business"; that it had paid a dividend as high as sixteen per cent and that there were fifty or more shares of stock in the treasury which were for sale at $100 a share. A second interview followed, when the defendant repeated in substance what he had previously stated at their first conference. The plaintiff requested and received from the defendant a financial statement of the company. It purported to be a copy of the balance sheet as of June 30, 1930. The assets were listed as cash $11,458.83, accounts receivable $348,370.20, furniture and fixtures $20,077.10, good will $113,600, treasury stock $50,000, and life insurance $2,200. Its total liabilities were accounts payable $270,013.78, notes payable $65,000, capital $200,000, and surplus $10,692.35. The plaintiff asked no questions about this balance sheet and the defendant made no statement concerning it. After he had gone over this sheet with a banker and with his father, the plaintiff purchased the stock late

in October, 1930, and entered the employ of the company. His stock was not delivered until October 30, 1931. In June, 1931, the stockholders voted to liquidate the company. Its name was changed to the Kilby Street Corporation (hereinafter called the corporation) and a new company was organized with the same name as the former company. On July 17, 1931, this new company purchased of the corporation its business, lease, furniture and all premiums on policies delivered after June 1, 1931. The consideration for this sale was $50,000 and some shares in the capital stock of the new company. This was paid. The corporation retained its cash, insurance on the life of its stockholders and its accounts receivable. The new company did not assume any liabilities of the corporation. The corporation ceased to do business after it had made this sale to the new company.

It could have been found that the company never paid a dividend amounting to sixteen per cent, and, in fact, never paid any dividends, although in May, 1923, it had voted to pay a dividend of five per cent but the vote was rescinded and $9,995 was distributed as salaries to six employees. In view of the evidence disclosed by the books, which was narrated in considerable detail at the trial, it was a question of fact as to whether or not the company was "doing a nice business" at the time of each interview, when, the jury could find, it was so stated to the plaintiff by the defendant. The balance sheet, even if it corresponded with the books, could have been found not to have fairly represented the actual financial condition of the company. The item "Accounts Receivable" included a partnership indebtedness that had been in existence since the inception of the company and had gradually increased to $43,413.44 on June 30, 1930. The same item on the last mentioned date also included a personal indebtedness of the defendant to the company amounting to $53,455.94. There was evidence that the defendant was liable for both these amounts and that he had not charged the company any salary in consideration of the company's carrying along this partnership indebtedness. The defendant testified as to his per-

sonal worth on October 30, 1930, but the jury were not bound to believe him, and they were warranted in finding from the entire evidence that, if payment had been demanded by the company, the defendant would have been unable to satisfy his indebtedness. The item of goodwill had remained unchanged from the incorporation of the company until June 1, 1931, and the jury could find that it was carried at an amount greatly in excess of its real value, even in view of the evidence of its sale in the process of liquidation to the new company. No separate valuation was placed upon the goodwill in the sale to the new company, and the liquidation of the company and the incorporation of the new company were evidently the means employed by the parties in interest to continue the business in the name of the company but without assuming its liabilities. But the company, as shown by the balance sheet, owed on accounts and notes payable $335,013.78 and the jury could find that, if the balance sheet had been accurate and reflected the true financial condition of the company, it would appear that the company was unable to satisfy its indebtedness. Indeed, the evidence showed that the company in 1930 had not paid its insurance creditors within the customary time. It is true that the plaintiff did not inquire about any item on the balance sheet, but it was for the jury to determine if he acted with reasonable diligence or if he could properly assume that the figures submitted were correct or that the accounts receivable were for money due for insurance and not for personal obligations of the defendant or that the items were recorded at their fair valuation. He was dealing with one who was the president and treasurer of the company and the holder of more than two thirds of its outstanding stock. Whether the plaintiff should have relied upon the statements of the defendant was properly left to the jury. The plaintiff is not as matter of law barred from recovery simply because he failed to make an inquiry as to what was included in the various items shown on the balance sheet. *Hanley Co. Inc.* v. *Whitney,* 279 Mass. 546. *Rudnick* v. *Rudnick,* 281 Mass. 205. *Picard* v. *Allan,* 285 Mass. 15.

The fair valuation of property is ultimately a question of fact. There can be, of course, an honest difference of opinion of value depending upon the nature of the property and the various elements included in determining its worth, but a jury may find, after making due allowances for reasonable variations among those expressing a sound and honest judgment, that an appraisal is so arbitrarily excessive and exorbitantly high as to constitute a deliberate overvaluation, which, in the light of the circumstances attending its use, may be indicative of an intent to mislead. *Commonwealth* v. *Butland,* 119 Mass. 317. *Standard Oil Co. of New York* v. *Back Bay Hotels Garage, Inc.* 285 Mass. 129. *Commonwealth* v. *Coshnear,* 289 Mass. 516. *Piper* v. *Childs,* 290 Mass. 560. The judge was right in refusing to direct a verdict for the defendant. *Nash* v. *Minnesota Title Ins. & Trust Co.* 163 Mass. 574. *Baskes* v. *Cushing,* 270 Mass. 230. *Kirkland* v. *Lawrence,* 292 Mass. 356. *Forman* v. *Hamilburg,* 300 Mass. 138. Am. Law Inst. Restatement: Torts, § 529.

The defendant excepted to the admission of an agreement dated July 26, 1932, between the corporation, its liquidating agent, the defendant and one Gale, in which it was recited that the corporation was in an insolvent condition and provision was made for the adjustment of the defendant's indebtedness amounting to $123,489.61 (which the defendant disputed) by the total payment of $25,000 in such yearly instalments as his business income would permit, after certain deductions from such income were made. This agreement also covered a settlement by Gale of his account. The agreement was made twenty-one months after the plaintiff had paid for his stock, thirteen months after it was voted to liquidate the company, and less than nine months after the purchase was completed by delivery of his stock. Time is only one element in considering whether the evidence was too remote and collateral to the issue. *Commonwealth* v. *Abbott,* 130 Mass. 472. *Arabia* v. *John Hancock Mutual Life Ins. Co.* 301 Mass. 397. The defendant continued as treasurer of the company until June, 1931, and as president until he re-

signed in 1932. The liquidation of the company had actually commenced more than three months before the sale of the stock had been completed by its delivery. There was evidence as to the amount of the indebtedness of the partnership from August, 1922, to October 31, 1933, when an entry was made in the journal "To reserve for bad accounts $44,973.95," which was the amount then due from the partnership. The personal indebtedness of the defendant was shown from September 14, 1921, up to August, 1934. The defendant objected to the introduction of this indebtedness from and after May 31, 1931, and also to the indebtedness due October 31, 1933, on a running account of one Williams; to the fact that the indebtedness of one Kemp was charged off in February, 1932, and the balance of the surplus account on December 31, 1931. There was considerable evidence of the financial condition of the company from its incorporation in 1921 to December 31, 1931, including the volume of business and the net profits or the actual losses sustained each year. The failure of the defendant to pay not only his own personal indebtedness but that of his partnership when the company was being liquidated could, in conjunction with the other evidence, be found to show his inability to pay on October 30, 1930, when the stock was bought. Evidence of both his and the partnership's indebtedness and of the number of years during which these accounts had existed was competent for the same purpose. There was evidence that the Kemp account began in 1921, that nothing had been paid by him since 1924, and that he was dead. There was evidence that Williams, on October 31, 1931, owed $2,689.90, and the defendant could not have been harmed by the testimony that it had been reduced by October 31, 1933. Testimony that "the balance of the surplus account was $233,126.44 in the red" on December 31, 1931, was competent in view of the fact that the plaintiff had secured his stock only two months before. Events occurring within a reasonable time after the sale of the stock to the plaintiff were admissible if they were shown to have resulted, in the usual and ordinary course, from actual conditions existing

at the time of the transaction. Upon the evidence, it was a question of fact whether the liquidation of the company was reasonably probable on account of its financial condition on October 30, 1930. The actual financial condition of the company at the time of the purchase was material not only in testing the accuracy of the alleged statements of the defendant but also, if the statements were found to be false, in determining the real value of the stock which the plaintiff contends he was thereby induced to purchase. The conduct of the company from the time of the purchase of the stock to the date of the agreement of July 26, 1932, was such, as shown by the evidence, that it could not be ruled as matter of law that the agreement bore no relation to the condition of the company on October 30, 1930, the time of the purchase of the stock. We think the evidence was admissible. It was sufficient to enable the jury to trace the successive steps leading up to the liquidation of the company and the execution of the agreement, and would warrant the finding that the agreement followed as a natural and proximate result of the financial situation of the company on October 30, 1930. *Brady* v. *Finn*, 162 Mass. 260. *Whiting* v. *Price*, 172 Mass. 240. *Walker* v. *Russell*, 186 Mass. 69. *Butler* v. *Martin*, 247 Mass. 169.

The judge was right in refusing to grant the fifth and sixth requests, that the burden was upon the plaintiff to prove that the defendant, on October 30, 1930, was unable to pay his indebtedness to the company and that there was no evidence that he was unable to do so. There was sufficient evidence of the inability of the defendant to pay. A party has no right to emphasize certain aspects of the testimony by requiring the judge to give instructions upon portions of the evidence, especially where the jury, upon the entire testimony, may discredit the evidence on which the instruction was based. *Barnes* v. *Berkshire Street Railway*, 281 Mass. 47. *Squires* v. *Fraska*, 301 Mass. 474. It may be added that the subject matter of these requests was adequately treated in the charge. The defendant was not entitled, as he sought by his twelfth and fourteenth requests, to have the jury instructed that the in-

ability of the defendant to pay his indebtedness to the
corporation did not reduce the actual value of the plaintiff's
stock or that, as the defendant was indebted for an amount
less than the value of his stock, the plaintiff's stock would
not be impaired by the defendant's failure to satisfy his in-
debtedness. The effect of his failure to pay upon the value
of the stock was for the jury, and the fact that he was a stock-
holder was immaterial in determining the solvency of the
company. *Calnan* v. *Guaranty Security Corp.* 271 Mass.
533. *Scriggins* v. *Thomas Dalby Co.* 290 Mass. 414. The
judge did not instruct the jury that the plaintiff did not
have any right to vote at the stockholders' meeting on
June 15, 1931, when it was voted to sell certain assets of
the company. The evidence was conflicting as to whether
or not the plaintiff attended this meeting and the question
was properly left to the jury. The fact that the stock was
not issued until after the meeting would not deprive him
of the rights of a stockholder at the time of the meeting,
if the jury found that he bought and paid for the stock on
October 30, 1930, that the stock was in possession of the
company as treasury stock and available for delivery, that
he was regarded and treated as a stockholder by those in
charge of the company, that he had demanded the delivery
of the stock, and that delivery was not made until October
30, 1931. *Central Mortgage Co.* v. *Buff*, 278 Mass. 233.

We discover no error in the rulings on evidence or in the
refusal to direct a verdict for the defendant or to grant his
requests for instructions.

*Exceptions overruled.*