COMMONWEALTH *vs.* JOSEPH E. SHEPPARD & another.

Plymouth.   December 7, 1942. — April 26, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Practice, Criminal,* Venue; Trial on one only of several indictments; Discretionary control of evidence; Exceptions: general exception, whether error shown, whether error harmful; Confession; Preliminary hearing; New trial. *Evidence,* Admitted de bene; Of scheme; Photograph; Opinion: expert; Competency; Admissions and confessions; Relevancy and materiality; General objection to admission of evidence; Presumptions and burden of proof; Hypothetical question; Of premeditation; Of sanity. *Error,* Whether error shown, Whether error harmful. *Witness,* Leading question.

No abuse of discretion, and no error, was shown in the denial of a motion, argued by counsel but unsupported by evidence, for a change of venue for the trial of an indictment for murder.

No abuse of discretion, and no error, appeared in the denial of a motion by the defendant for a trial together of three indictments each of which charged him with a different murder.

No error was shown in a judge's not striking out evidence admitted by him de bene at a criminal trial where it did not appear that any motion to that effect had been made at a time which he had set for the making thereof.

At the trial of an indictment for murder of a prison guard in the course of an attempt by the defendant to break prison, the jury properly were permitted to consider evidence relative to the killing by the defendant of two other guards in the earlier stages of the same attempt to escape, where proper instructions were given limiting use of the evidence to the purpose for which it was competent.

No error appeared in the admission, at the trial of an indictment for the murder of a prison guard in the course of an attempt to break prison, of evidence of conversations by the defendant with a fellow prisoner within two months before the crime respecting plans for the break.

The allowance of leading questions by the district attorney of a witness called by the Commonwealth at a trial for murder is almost wholly within the discretion of the trial judge.

A general exception, without specification of grounds therefor, by one of two defendants being jointly tried for murder, to the admission of evidence which was admissible as to the other defendant only, was overruled.

No abuse of discretion was shown in the admission, at the trial of an indictment for murder, of a photograph of the body of the murdered man as bearing on a contention by the Commonwealth that the crime was committed with extreme atrocity or cruelty.

Testimony at the trial of an indictment for murder, that a substance on a chisel, identified as having been used on the murdered man, looked like dried blood, could properly be given by one not qualified as an expert.

Admission at the trial of an indictment for murder of a question to an officer of an institution, "Did you talk with" the defendant "that night," which was the night of the murder, and the officer's answer, "Yes," without further evidence as to the subject matter of the "talk," was not prejudicial to the defendant, even if the defendant then was under arrest.

Upon the offer by the Commonwealth of an alleged confession by the defendant, at the trial of an indictment, the trial judge, if requested, should hold a preliminary hearing in the absence of the jury on the question whether the confession was made voluntarily; if he determines that question affirmatively, or if no request for such preliminary hearing is made, the evidence of the confession and of the circumstances in which it was made should be presented to the jury with suitable instructions that the confession should not be considered by them unless they are satisfied that it was voluntarily made, and that the burden is on the defendant to show that it was not so made.

No error appeared in the admission of evidence, at the trial of an indictment, of a confession by the defendant after the trial judge had determined at a preliminary hearing in the absence of the jury and upon conflicting evidence that the confession was made voluntarily.

No error was shown in the admission in evidence, at the trial of an indictment against two defendants charging murder, of confessions given by them separately to an officer of an institution where they were under arrest, where it appeared that there was conflicting evidence as to the circumstances in which the confessions were made and that the jury were instructed that they should not consider them unless they were satisfied that they were made voluntarily, and that each confession should be considered solely on the issue of the guilt of the defendant making it.

Determination of the proper form of a hypothetical question to a qualified expert is largely in the discretion of the trial judge.

No error was shown in the admission under suitable instructions at the trial of an indictment charging murder, where the defendant had pleaded not guilty by reason of not being criminally responsible at the time of the commission of the crime, of evidence of conduct of the defendant both in and out of the court room during the trial, from which an inference might be drawn as to the condition of his mind at the time of the crime.

At the trial of an indictment for murder of a guard at an institution in which the defendant was confined, where the defendant had pleaded not guilty by reason of not being criminally responsible at the time of the commission of the crime charged, evidence relating to overcrowded conditions at the institution and as to remedial treatment given the inmates there might properly be excluded in the discretion of the judge as remote on the issue of premeditation.

Exclusion, at the trial of an indictment for murder, of questions bearing on the mentality of the defendant, asked in cross-examination of a

medical examiner called by the Commonwealth and not qualified as an expert on mental diseases, disclosed no error.

No prejudicial error was shown at the trial of an indictment for murder, in permitting an expert called by the defendant to be asked in cross-examination a hypothetical question, the answer to which was favorable to the defendant.

At the trial of an indictment for murder to which the defendant had pleaded not guilty by reason of not being criminally responsible at the time of the murder, admission of testimony of a qualified psychiatrist who had examined the defendant three times after the crime, which was to the effect that in his opinion the defendant was not suffering from any mental disease and was not insane on the day of the crime, and that he had the ability to distinguish between right and wrong as to the acts he committed on that day, disclosed no error.

No abuse of discretion appeared in the denial of a motion for a new trial of an indictment for murder of a guard at an institution where the defendant was confined, based on alleged newly discovered evidence that another inmate who had testified for the Commonwealth had been recommended for release three weeks after the crime, and that his parole had been voted previous to the trial of the indictment.

INDICTMENT, tried in the Superior Court before *Brown,* J., on June 15–26, 1942.

*E. A. Ryan,* (*J. F. Ryan* with him,) & *J. M. Boyle,* (*S. Rosenberg* with him,) for the defendants.

*E. R. Dewing,* District Attorney, for the Commonwealth.

DOLAN, J. On February 5, 1942, the defendants were indicted for the murder of George Landry, at Bridgewater, on January 1, 1942. They were found guilty in the first degree and filed appeals with assignments of error. See G. L. (Ter. Ed.) c. 278, §§ 33A–33G. Sheppard had pleaded not guilty, and a plea of not guilty had been entered by order of the judge for Millard. These pleas were subsequently withdrawn and a plea was entered for each defendant of not guilty by reason of not being criminally responsible at the time of the commission of the crime charged.

There was evidence that at the time of the alleged murder of Landry he was a guard at the male defective delinquent department of the Bridgewater State farm, to which the defendants had been committed as defective delinquents and were there confined; that a few weeks prior to January 1 the defendants planned to escape from the State farm on that day; that in pursuance of that plan, on that day at

about 10 A.M., they accompanied one Weston, a prison guard, at his request, into the carpenter shop; and that they there assaulted him, beat him to death, and concealed his body in a toilet.   There was also evidence that they broke into a cabinet containing carpenter's tools, and removed therefrom some hammers and chisels and an iron bar which they used in an unsuccessful attempt to pry open the iron grating on a window leading to the outside of the institution and to freedom.   Shortly afterwards they were discovered by officer Murphy, a guard, on the fourth floor of the building.   They told him they were "house-breaking" and attacked him. In an attempt to get away from the defendants Murphy reached the landing on the third floor of the building, where the defendants again attacked him.   His dead body was found underneath a sink by officers of the institution.   The defendants returned to the fourth floor where they encountered officer Landry.   They fell upon Landry and beat him to death, inflicting a great many wounds on his head and chest.   The defendants barricaded themselves at the end of a corridor on the fourth floor with a bed, chairs, table and mattress.   State police arrived reinforcing the guards at the institution.   They went to the place of the barricade. Smoke was coming therefrom; the corridor was full of tear gas and smoke and water.   Sheppard had a hose in his left hand, and a hammer in his right hand.   He was standing in front of Millard.   They jumped into cells.   They were told to come out.   After a "riot gun" had been fired a second time, they came out of the cells on their hands and knees. Sheppard "made a swing" at sergeant Fratus.   State police officer Moran "swung the riot gun and hit . . . [Sheppard] over the head and knocked him on his face."   Moran also struck Millard over the head with the gun which "shattered" and Millard dropped on his face.   Sheppard had a chisel in his belt, and Millard had a hammer in his pocket.   There "were a lot of weapons around the floor that were found later."   During the course of these affrays Millard's hand was fractured and Sheppard received a bullet wound in his chest.   They were taken to the prison hospital.   Psychiatrists, who had examined both defendants, as well as prison

physicians were called as witnesses by the defendants and the prosecution. Their testimony was conflicting, but the jury could have found that the defendants were high grade morons who had displayed from early childhood anti-social traits and criminal delinquencies, in some instances, in the case of Sheppard at least, of a maliciously dangerous character which had required their removal from State institutions for the feeble minded and confinement in the department of defective delinquents at the Bridgewater institution. The jury could also have found that neither of the defendants suffered from legal insanity, and that, though defective mentally, they had sufficient mental capacity to formulate and carry through a plan, and to appreciate the nature and probable consequences of their acts on January 1, 1942, as well as an ability to distinguish and appreciate the difference between right and wrong and to be capable of deliberately premeditated action. *Commonwealth* v. *Rogers,* 7 Met. 500, 501, 502. *Commonwealth* v. *Stewart,* 255 Mass. 9, 13, 14. *Commonwealth* v. *Trippi,* 268 Mass. 227, 230, 231. *Commonwealth* v. *Zelenski,* 287 Mass. 125, 127, 128. *Commonwealth* v. *Clark,* 292 Mass. 409, 414. The jury could also have found that Landry had been killed with "extreme atrocity or cruelty." See *Commonwealth* v. *Bartolini,* 299 Mass. 503, 516.

The first assignment of error of both defendants is to the denial by the judge of a motion by each of them for a change of venue on the ground of alleged local prejudice, inflamed public opinion "and bias which is rampant in said county, the immediate community where the three victims resided, namely the towns of Bridgewater, Whitman, and Taunton." No evidence was adduced in support of these motions, which were argued by counsel. It is settled that such motions ought not to be granted upon mere suggestion, but that the jurisdiction to order a change of venue (G. L. [Ter. Ed.] c. 277, § 51) should be exercised only "after a solid foundation of fact has been first established." *Crocker* v. *Justices of the Superior Court,* 208 Mass. 162, 180. *Commonwealth* v. *Leventhal,* 236 Mass. 516, 524. *Hinckley* v. *Perrin,* 253 Mass. 527. *Commonwealth* v. *Millen,* 289 Mass.

441. There is nothing in the record to show an abuse of discretion in proceeding with the trial in the county where the alleged crime was committed.

The defendants had also been indicted for the murder of Weston and Murphy, by separate indictments, but the prosecution elected to proceed to try the defendants only upon the indictment for the murder of Landry. The second assignment of error of each of the defendants is to the action of the judge in denying his motion that the three indictments be tried together. The determination of these motions rested in the sound discretion of the judge, *Commonwealth* v. *Rosenthal*, 211 Mass. 50, 54, and as was said in *Commonwealth* v. *DiStasio*, 294 Mass. 273, 279, where the error assigned was, as here, the denial of a motion to have several indictments tried together, "The asserted right to be tried on all the indictments at once finds no support in *Commonwealth* v. *Slavski*, 245 Mass. 405 . . . . The pendency of other indictments did not affect the responsibility of the defendant upon the one upon which he was put to trial." No abuse of discretion by the judge in denying the motions in question is made to appear.

The third and fourth assignments of error of the defendants are to the admission de bene of evidence presented by the Commonwealth relative to the killings of the guards Weston and Murphy by the defendants. The Commonwealth in its opening had promised to show that those killings were done in furtherance and as a part of a plan made by the defendants to escape from the institution, and that they were an integral part of the chain of circumstances and events which shortly afterwards culminated in the killing of Landry. The evidence was admitted de bene over the objections and subject to the exceptions of each of the defendants, who, after its admission, moved that it be struck out, on the ground that the Commonwealth had failed to show any plan with which the killings of Weston and Murphy as well as the killing of Landry had to do. The judge ruled that the motions should not be made until the conclusion of the Commonwealth's evidence. No exception was taken to this ruling, nor did either of the

defendants thereafter renew his motion to strike out the evidence in question. The judge was not obliged of his own motion to strike out the evidence admitted de bene, and no motion having been made to that end by the defendants at the proper time, no error is shown. *Commonwealth* v. *Johnson*, 199 Mass. 55, 59. *Doon* v. *Felton*, 203 Mass. 267, 272. *Haskell* v. *Cunningham*, 221 Mass. 49, 53. *Alden Bros. Co.* v. *Dunn*, 264 Mass. 355, 362. In this connection, however, we deem it appropriate to say that we are of opinion that the evidence tended to show that these precedent killings (of Weston and Murphy) did render the commission of the crime charged more easy, more effective "to produce the ultimate result which formed the general motive and inducement" of the defendants and that they were done with that intention and purpose and so had "such a connection with the crime charged as to be admissible, though they . . . [were] also of themselves criminal." *Commonwealth* v. *Robinson*, 146 Mass. 571, 578, 579. See also *Commonwealth* v. *Lubinsky*, 182 Mass. 142, 143; *Commonwealth* v. *Snell*, 189 Mass. 12, 21, 22, 23; *Commonwealth* v. *Murphy*, 282 Mass. 593, 598, 599; *Commonwealth* v. *Green*, 302 Mass. 547, 552. For the reason that a defendant is not to be convicted of one crime by proof that he was guilty of another, "it is essential to the rights of the accused that, when such evidence is admitted, it should be carefully limited and guarded by instructions to the jury, so that its operation and effect may be confined to the single legitimate purpose for which it is competent." *Commonwealth* v. *Shepard*, 1 Allen, 575, 581, 582. *Commonwealth* v. *Jeffries*, 7 Allen, 548, 566, 567. That was carefully done by the judge in the course of his charge to the jury in the court below. No argument has been addressed to us in behalf of either defendant that evidence relating to the killings of Weston and Murphy was not properly limited in its application by the judge.

The fifth and sixth assignments of the defendant Millard and the ninth assignment of error of the defendant Sheppard will be considered together. Those of Millard relate to the admission of the testimony of one Cesario, who was confined

in the institution at the time of the alleged murder, to the effect that two weeks before Thanksgiving of 1941 Millard talked with him about "how he could make a break" and that "if he didn't have a chance to get out, he has got a way to get out." The evidence to the admission of which Sheppard excepted was that of Cesario to the effect that on the day before Thanksgiving of 1941 Sheppard spoke to him about making a "break" when "the other fellows go to the movies" (one hundred or two hundred having been denied that privilege); they could break through the bathroom; if Cesario did not "stick" he would "get the same as anybody else"; and the "first guy that backs out will get a knife." There was no error in the admission of this evidence. It was competent for the Commonwealth to show the whole history leading up to the killing of Landry from the inception of the scheme to its consummation. *Commonwealth* v. *McDermott*, 255 Mass. 575, 581. *Commonwealth* v. *Snyder*, 282 Mass. 401, 416. *Commonwealth* v. *Mannos*, 311 Mass. 94, 105, 106. It cannot be said properly as matter of law, as argued by the defendants, that the conversations were too remote in point of time to be admissible. That question was addressed to the discretion of the judge. *Commonwealth* v. *Holmes*, 157 Mass. 233, 240. *Sherburne* v. *Meade*, 303 Mass. 356. The defendant Millard objects that in the course of eliciting the testimony of Cesario as to statements made by him leading questions were asked. The allowance of leading questions is almost wholly in the discretion of the judge, and in *Guiffre* v. *Carapezza*, 298 Mass. 458, 460, the court said: "We are aware of no decision in this Commonwealth in which exceptions have been sustained because of the allowance of leading questions." See also *Gray* v. *Kelley*, 190 Mass. 184, 187; *Westland Housing Corp.* v. *Scott*, 312 Mass. 375.

It seems appropriate to consider at this place the eighth assignment of error of Sheppard, which relates to the testimony of Cesario as to his conversation with Millard. Sheppard assigns as error that the judge did not instruct the jury that that evidence was to be considered only as bearing on the guilt of Millard, and was not to be considered as evidence

against Sheppard. Cesario, who was a witness for the Commonwealth, was being interrogated with reference to certain conversations he had had with Millard. He had testified that Millard had talked with him about plans for making a "break." He was asked by the district attorney at one point, "Can you tell us what conversation you had with Millard at that time?" and replied, "Well, he was — as I say he was going to get the officer some cigarettes to go upstairs." Counsel for Millard objected. The judge allowed the answer to stand. Counsel for Millard moved to strike the answer out, but the judge declined to do so, subject to his exception. Counsel for Sheppard then said, "And the defendant's Sheppard's, may that exception be saved . . . ?" The judge replied, "Your client is not involved, but you may have it if you want it." We think this statement of the judge, together with other rulings made with respect to similar matters in the course of the trial, was probably sufficient to inform the jury that the testimony of Cesario of his conversations with Millard in the absence of Sheppard was not admissible against Sheppard. But if, as argued by Sheppard, the judge erred in not expressly directing the jury not to consider this evidence against Sheppard, we are of opinion that the exception upon which Sheppard relies was not properly saved. In the instant case the evidence in question was competent as against Millard, and it is settled that "a general objection and exception to evidence will not prevail, if the evidence is competent for any purpose, and that the objecting party must call the attention of the judge specifically to any limitations which he believes should be imposed upon its application to the issues," and the "same rule is held to apply where there are several parties or where . . . several cases are tried together, and evidence is offered which is competent as to one or more parties or cases and not competent as to others." *Solomon* v. *Dabrowski*, 295 Mass. 358, 359, 360, and cases cited. The assignment of error under discussion is not sustained.

The seventh assignment of error of Millard and the tenth of Sheppard are the same. They relate to the admission in evidence, subject to their exceptions, of a photograph

of the upper part of the body of Landry. The defendant Millard argues that the photograph could have been shown and was in fact shown to have been altered and "doctored" as to the face, and that the sight of it may have induced in the jury loathing of the crime and hatred of the accused. Sheppard objects that the photograph also portrays "a foreign hand, apparently of a living person, who was manipulating the posture of position of said body within the focus of said camera at the time the picture was taken," and also that it is "not a fair representative of that which it intended to portray . . . but, instead a portrayal of the body with its inflammatory implications." These matters were for the determination of the judge, and the admissibility of the photograph rested largely in his discretion. *Everson* v. *Casualty Co. of America,* 208 Mass. 214, 219, 220. *Eldredge* v. *Mitchell,* 214 Mass. 480, 483. It was not to be excluded merely because it depicted something gruesome, or because it might have tended to produce loathing on the part of the jury. The photograph of the head of Landry showing the nature of his wounds was relevant on the issue of atrocity, one of the grounds upon which the Commonwealth contended that the defendants were guilty of murder in the first degree. *Commonwealth* v. *Retkovitz,* 222 Mass. 245, 249. *Commonwealth* v. *Knowlton,* 265 Mass. 382, 386. *Commonwealth* v. *Osman,* 284 Mass. 421, 423. *Commonwealth* v. *Clark,* 292 Mass. 409, 410. *Commonwealth* v. *DiStasio,* 294 Mass. 273, 282, 283. There was no error in the admission in evidence of the photograph.

The eighth assignment of error of Millard and the eleventh of Sheppard relate to the testimony of one Dr. Leavitt, a witness for the Commonwealth, to the effect that a substance on the back of a chisel identified as having been used on Landry looked like dried blood. The defendants argue that it was error to admit this evidence because the witness had not qualified as an expert and had made no chemical analysis of the substance in question. There was no error in the admission of this evidence. One may testify that a substance looks like dried blood without being an expert.

See *Commonwealth* v. *Dorsey*, 103 Mass. 412, 419, 420; *Commonwealth* v. *Sturtivant*, 117 Mass. 122.

The ninth assignment of error of Millard relates to the admission of certain evidence concerning a conversation had by Warren, the superintendent of the institution, with Millard on the night of the day Landry was killed. Warren was asked by the district attorney, "Did you talk with Millard that night?" Warren replied, "Yes, sir." He was then asked, "Did he answer any questions?" Warren replied, "No, sir, he — I went over and talked to him in his room and he refused to talk at all." Counsel for Millard objected and moved that both the question and answer be struck out. The judge ruled that the "question, did he talk with Millard, and the denial, may stand." We interpret this to mean that the question whether Warren talked with Millard that night and the response thereto (yes), and the question whether Millard answered any of Warren's questions and the simple reply, "No, sir," were to stand, and no more. Counsel for Millard has argued that all of this testimony should have been struck out because, if a defendant is charged with the crime by an accusation made in his presence and hearing and he remains mute, his silence is not admissible against him. That is well settled law. *Commonwealth* v. *Spiropoulos*, 208 Mass. 71, 74. *Commonwealth* v. *Gangi*, 243 Mass. 341, 345.

Conceding for the purposes of the case that Millard was under arrest at the time in question, we are of opinion that the evidence that the judge refused to strike out does not come within the rule just referred to and was not prejudicial to the rights of Millard. That evidence does not disclose what the "talk" was that Warren then had with Millard, or what the questions were, if any, to which Millard did not reply. There is nothing to show that at that time any statements were made by Warren or anyone else charging Millard with the crime in question or with any other crime. It is the duty of an excepting party to show what harm has come to him by the admission of evidence. The evidence complained of under this assignment of error does not show the subject matter to which the "talk" or

the "questions" related. See *Posell* v. *Herscovitz*, 237 Mass. 513, 516.

We have examined our decisions where the rule relied upon by Millard has been considered, those of other jurisdictions where the rule is recognized, and legal treatises that discuss the rule, and we find no authority for the proposition that the rule applies other than where the one charged with crime is accused while under arrest in his presence and hearing and remains silent. The evidence under consideration, as we have already stated, does not contain the elements of which the rule is composed. In fact, the evidence was valueless and might better have been struck out, but we think that it cannot be said rightly to have prejudiced in any way the rights of Millard. In so deciding we do not depart from the rule invoked by Millard, which must be strictly observed, but in its strict observance we think that the circumstances to which the rule relates must be present to establish error. It is proper to observe that the judge in his charge to the jury, although without express reference to this particular evidence, made it clear that silence on the part of the defendants could not be considered against them.

The tenth and eleventh assignments of error of Millard relate to the admission of the testimony of Warren as to conversations he had with Millard on January 4, 1942. This evidence was sought to be presented by the Commonwealth just after that to which we have referred in the consideration of Millard's ninth assignment of error. Warren testified that he talked with Millard on Sunday, January 4; that in his conversation with him he promised him nothing, made no threats, and that Millard answered the questions put to him freely. After a few more preliminary questions had been put to and answered by Warren, the jury retired at the direction of the judge and he held a preliminary hearing. Much of the testimony given at this hearing was conflicting. Millard testified at this hearing. There was evidence that, two days before the alleged talk with Warren, Millard had been taken to the prison hospital and confined in a maximum security cell in the department for the criminally insane. On January 3 there had been an affray between Millard and some

attendants, in the course of which he was knocked to the floor, the bandages on his head and fractured hand came off, and he suffered at least minor contusions of the chest and abdomen.  A report was made of this incident and he was attended by a prison physician.  The next day (January 4) he told one of the attendants that he wanted to make a statement to superintendent Warren, who was called, and Millard made a statement to him, in terms similar in most respects to one made by Sheppard, and to which Warren had previously testified before the jury.  There was a variance only in the respect that Millard said he did not touch officer Murphy, but Millard did say that "he did remember of killing Mr. Weston and Mr. Landry."  At the preliminary hearing Millard also testified, in substance, that he was transferred to a solitary confinement cell in the hospital for the criminally insane for the purpose of coercing a confession; that he had no clothing and no bedding, except a mattress on the floor, and no means of attending to his physical needs; that until he made his confession he was given no food except a little bread and coffee; that the guards repeatedly threatened him, beat him and strangled him with towels, beat him in the washroom and told him what he would get if he did not talk; and that, fearing the consequences, he called for Warren and made the statement subsequently testified to by Warren.  On the other hand, evidence was introduced by the Commonwealth, in contradiction of the testimony of Millard, tending to show that he was transferred to the maximum security cell, upon the approval of a physician and upon Warren's order, for Millard's own safety and that of others; that he had adequate bedding and regular prison fare; that in the matter of the affray before referred to Millard had attacked the guards; and that no greater force was used than was necessary to restrain him.  Subsequently this evidence was introduced before the jury, subject to Millard's exceptions.

At this point we consider also Sheppard's fourteenth assignment of error which is based upon his exceptions to the admission of the testimony of Warren as to a conversation he had with Sheppard.  No voir dire was requested by coun-

sel or held prior to the admission of this testimony. The ground of objection is based on the alleged physical and mental condition of Sheppard when the conversation in question took place. Warren testified, in substance, that he visited Sheppard in the prison hospital a few hours after he had been shot in the chest. Sheppard was suffering at the time. Warren told him that he might die and that he ought to tell the truth because other inmates might be implicated. Sheppard thereupon stated to Warren, in substance, that he and Millard had planned what happened on New Year's day about two weeks before; that he and Millard went to the carpenter's shop on January 1, 1942, and met Weston; that Millard grabbed Weston and that he, Sheppard, struck Weston, took his club and struck him over the head two or three times with it; that Weston was then stunned; that the "lead and the spring out of the leather case came out" and Millard went over and got the "last" and struck him over the head with it; that they took the last, broke the cabinet doors and took out some hammers, chisels and an iron bar; that Weston started to recover and to "holler"; that Sheppard "told Millard to stop him and [that] he [Sheppard] took a chisel and plunged into . . . Weston's body . . . they then put the body into the toilet" and covered it with their coats; that they went to the third floor and made an attempt to break out; that the chisel kept chipping and "wouldn't cut the prong that was holding the screen"; that they "started back and up the stairs of the floor" and met officer Murphy and an inmate; that Murphy started to run; that Millard threw a hammer at him and that it struck Murphy on the head; that Murphy went down the stairs and Millard struck him with a chisel as a result of which he died; that they came up the stairs and met Landry; that he grabbed his club, but before he could use it "they" struck him with hammers and he went down; that he came up and they hit him again; that he came up again and they hit him again; that he "put up an awful fight."

It is established that a confession of guilt drawn from a defendant through threat or by promise of favor is not admissible because not voluntarily made, but induced by

coercion or promise of benefit. *Commonwealth* v. *Chabbock*, 1 Mass. 144. *Commonwealth* v. *Sherman*, 294 Mass. 379, 395. *Commonwealth* v. *Mabey*, 299 Mass. 96, 98, 99. Whether a confession was voluntarily made is a question on a preliminary hearing, if one is requested or held, for the determination of the judge in the first instance. If satisfied that it was so made, he admits it, allowing the jury to pass upon the testimony as to the circumstances under which it was made, with instructions to the jury to give it such weight as they feel it is entitled to and to reject and disregard it if they are satisfied that it was not voluntarily made. *Commonwealth* v. *Russ*, 232 Mass. 58. The weight to be given to the evidence taken at the preliminary hearing with relation to Millard was for the judge. He was not bound to give credit to the testimony of Millard as to the circumstances under which he made the confession. *Commonwealth* v. *Mabey*, 299 Mass. 96, 97, 98. He saw the witnesses and was satisfied to let the confessions in. *Commonwealth* v. *Bond*, 170 Mass. 41, 44. The burden was on the defendant to show compulsion or promise of favor. *Commonwealth* v. *Clark*, 292 Mass. 409, 411. *Commonwealth* v. *Gordon*, 307 Mass. 155, 157. It cannot be said properly that the preliminary finding of the judge was not justified. He clearly and accurately instructed the jury with respect to their powers in the subject matter, in accordance with the principles already set forth. There was no error in the admission of the evidence in question.

The general principles relative to the admissibility of confessions to which we have just referred apply equally in the matter of Sheppard's fourteenth assignment of error, and it was for the jury to find whether upon the evidence his confession was voluntary. The jury were instructed at length by the judge in accurate terms as to the law of confessions, pointing out that they are admissible "where they are voluntary, and only when they are voluntary." The jury must be taken to have followed those instructions, and the evidence would warrant them in finding that the confession of Sheppard was made voluntarily, and that the physical and mental condition of Sheppard at the time in question was

not such as to deprive him of the faculty of consciousness of the physical acts performed by him, of the power to retain them in his memory, or of the capacity to state them with reasonable accuracy. See *Commonwealth* v. *Zelenski*, 287 Mass. 125, 128, 129.

The seventh assignment of error of Sheppard relates to the admission of certain testimony of Warren. The error assigned is that, when the testimony of the conversation between Warren and Millard was admitted, the judge failed to instruct the jury that such testimony could have no application to the rights of Sheppard, and to disregard it in passing upon his guilt or innocence because not made in his presence. The short answer is that when Warren was about to testify as to his conversation with Sheppard, the judge very plainly instructed the jury that the evidence was not to be received against Millard but was to be confined in its application to Sheppard, and that later, when the witness was about to testify to his conversation with Millard and Sheppard's counsel objected to anything that might be said in any way relating to Sheppard, the judge ruled, "It may be admitted, under the same limitations as I admitted the talk with Sheppard." Thus limited there was no error in the admission of the evidence in question.

The twelfth and thirteenth assignments of error of Millard relate to the exclusion of questions asked of the senior physician at the State farm at Bridgewater, concerning whether Millard was legally removed to the cell in the department for the criminally insane. Without regard to the materiality of the questions the physician had already answered three times that he did not know whether the removal was legal or not. No error is disclosed.

The fourteenth, fifteenth and sixteenth assignments of error of Millard have no merit. They relate to the answers to certain hypothetical questions put to Dr. Tillotson, a psychiatrist of long standing, which bore upon the mental condition of the defendants. They were based on facts which had been testified to. Their form was largely in the discretion of the judge and no abuse of discretion is shown. They were well within the principles set forth in *Common-*

*wealth* v. *Johnson,* 188 Mass. 382, 384, 386, *Commonwealth* v. *Phelps,* 210 Mass. 109, 114, *Commonwealth* v. *Stewart,* 255 Mass. 9, 13, 14, *Sullivan* v. *Brabason,* 264 Mass. 276.

The seventeenth assignment of error of Millard relates to similar questions put to Dr. Raymond, a psychiatrist, and is disposed of by what we have just said in reference to his fourteenth, fifteenth, and sixteenth assignments of error. This seventeenth assignment of error is the last assignment of error by Millard in the summary of the record.

Sheppard's twentieth assignment of error relates to the admission of the testimony of one McDonald, a guard at the Plymouth house of correction where the defendants were confined before and during the trial. Called as a witness by the Commonwealth, McDonald testified that he had observed the defendants when they were in the court room and after they left it; that outside the court room they did not maintain the "crouched" position that they had maintained when in the court room; that outside the court room "they have forgotten about everything that is going on in here." He was then asked by the district attorney: "What do they think or what do they talk about . . . ?" Objection was made by Sheppard, but the question was admitted subject to his exception. McDonald then testified that they smoked, they laughed, they joked; but, in response to questions by counsel for Millard, repeated that when "they get out," they did not seem to be worried "a bit" about the trial, that it was not "on their minds" but they "talk about it." Counsel for Sheppard has argued, in substance, that this testimony of McDonald would permit an inference to be drawn by the jury from the failure of Sheppard to testify at the trial in his own behalf, that it suggested a sham "on the part of . . . Sheppard," that is, that he was feigning insanity. It seems obvious that the testimony in question could not be construed properly by the jury as a reflection on the failure of Sheppard to take the stand. Where the defence is in effect insanity it has exclusive reference to the time of commission of the offence charged; but the

conduct of the accused prior to and within a reasonable time of the act charged may be considered by the jury in determining the condition of mind of the accused when the crime was committed. *Commonwealth* v. *Spencer*, 212 Mass. 438, 446, 447. *Wright* v. *Wright*, 139 Mass. 177, 182. See *People* v. *David*, 12 Cal. (2d) 639, 649; *Baker* v. *State*, 190 Ind. 385, 396, 397; *Bulger* v. *People*, 60 Colo. 165, 172, 173; *United States* v. *Chisholm*, 153 Fed. 808; 2 Wigmore, Evidence (3d ed.) § 228. The witness McDonald could testify properly to facts within his knowledge from which the condition of mind of the defendants at the time of the alleged crime might be inferred. *Hastings* v. *Rider*, 99 Mass. 622, 624. *Commonwealth* v. *Spencer*, 212 Mass. 438, 446, 447. And it has been held that evidence of conduct on the part of an accused tending to show that he has feigned insanity is competent to prove guilt. *Basham* v. *Commonwealth*, 87 Ky. 440. *State* v. *Stevens*, 242 Mo. 439. But, apart from these considerations, the judge instructed the jury favorably to Sheppard and Millard as to this subject matter, stating that the jury were to confine their consideration of the mental condition of the defendants to the time of the alleged murder of Landry, and that this was so despite the fact that it had been suggested that they draw some inferences that the defendants were capable of understanding what the trial was all about, and the possible consequences to them. We do not sustain Sheppard's twentieth assignment of error.

In the brief filed by Millard his counsel sets forth what is described as "Error No. 18," directing our attention to the testimony of McDonald, which we have just described in the consideration of Sheppard's twentieth assignment of error, and also to certain statements made by the district attorney in connection with that testimony in his closing argument to the jury, complaining that these "remarks show clearly the inferences the district attorney made and asked the jury to draw as a result of the failure of the defendant [Millard] to take the witness stand." No exception was taken by Millard to the admission of the testimony of McDonald, no objection was made by

him to the statements of the district attorney complained of in Millard's brief. They were not brought to the attention of the judge at that time or at any other time (see *Commonwealth* v. *Spencer*, 212 Mass. 438, 450), and the summary of the record discloses no assignment of error in connection therewith. We have, however, examined the record, and considered the statements made by the district attorney, to which objection is now made by Millard for the first time. There is nothing in them that would warrant the jury in inferring that reference was being made directly or indirectly to the failure of the defendants to take the witness stand, a subject upon which the judge fully and carefully instructed the jury to the effect that their failure so to do, their silence, could not be considered against them.

Certain other assignments of error of Sheppard alone remain to be considered.

The fifth assignment relates to the exclusion of evidence of overcrowded conditions in the defective delinquent department of the State farm, offered as showing by inference that that condition had an unsettling effect on Sheppard's low mentality, tending to drive him to act on uncontrollable impulses, and as thus bearing on premeditation. There was no error in its exclusion. It had little, if any, probative force and could be properly excluded in the discretion of the judge as too remote. *Commonwealth* v. *Holmes*, 157 Mass. 233, 240. *Arabia* v. *John Hancock Mutual Life Ins. Co.* 301 Mass. 397, 402.

Sixth assignment of error. There was no error in the exclusion of proffered evidence of a conviction of an offence by one Allen, a witness at the trial, since no record of the conviction was presented. *Commonwealth* v. *Walsh*, 196 Mass. 369. *Commonwealth* v. *Bishop*, 296 Mass. 459, 461, 462. *Morrissey* v. *Powell*, 304 Mass. 268, 272.

Twelfth assignment of error. There was no error in the exclusion of questions asked of Dr. Leavitt on cross-examination as to the mentality of Sheppard, based on his experience and his observations of the wounds found on the body of Landry. The witness was the medical examiner and surgeon who had examined the body of

Landry shortly after his death.   He was not offered nor did he qualify as an expert on mental diseases.   See *Commonwealth* v. *Spencer*, 212 Mass. 438, 447, 448.

The thirteenth, fifteenth, sixteenth, seventeenth and eighteenth assignments of error concern the exclusion of questions put to superintendent Warren relative to the remedial treatment of inmates of the defective delinquent department, of questions put to the commissioner of mental health as to recommendations made after January 1, 1942, for such treatment, to the commissioner of correction concerning the adequacy of quarters at Bridgewater, and to the master of the State farm relative to remedial therapy given to inmates.   This evidence was offered for the same purposes as that already referred to in consideration of Sheppard's fifth assignment of error.   For the same reasons given in dealing with that assignment there was no error in the exclusion of this evidence.

Sheppard's nineteenth assignment of error relates to the admission of an hypothetical question put to Dr. Bryan by the district attorney on cross-examination.   The question was based on assumptions that Sheppard had planned to escape for some weeks prior to January first, "and had a method or plan to escape, to put out of the way a guard by the name of Weston and then to get out through a window, and in fact on January first did put out of the way the guard Weston and did attempt to get out of a window," and the witness was asked whether upon these assumptions he would say that Sheppard appreciated the consequences of his act.   Counsel for Sheppard objected to the admission of this question on the ground that there was no evidence that Sheppard had planned to kill Weston. The ultimate responses of the witness were in substance that Sheppard might appreciate what he was doing, but that it was extremely doubtful whether he gave enough long range thought to it to appreciate what might happen, and that there was a great deal of doubt in his, Dr. Bryan's, mind whether Sheppard intended to kill anybody.   The evidence was favorable rather than prejudicial to Sheppard, and was substantially the same as the testimony of Dr.

Bryan on direct examination to the effect that at the time that Landry was killed, Sheppard was not able to distinguish between right and wrong in the sense that he would have no appreciation of the consequences of his act. No prejudicial error is shown.

The twenty-first and twenty-second assignments of error relate to the exclusion of evidence of the same character as that already considered under Sheppard's fifth, thirteenth, fifteenth, sixteenth, seventeenth and eighteenth assignments of error. For reasons already given there was no error in the exclusion of the evidence in question.

The twenty-third assignment of error. Obviously there was no error in the exclusion of the question put to Dr. Raymond, whether the fact that a statute forbids an inmate of an institution for defective delinquents to marry indicates that the Legislature thought such inmates to be irresponsible. The opinion of the Legislature with respect to the statute, the purposes of which are generally to safeguard genetics and heredity, would not have any probative force on the issue of whether Sheppard was criminally responsible.

The twenty-fourth and twenty-fifth assignments of error refer to the admission in evidence of answers to questions put to one Dr. Holt, who qualified as a psychiatrist and who had examined Sheppard on three occasions subsequently to January 1, 1942. The answers were that, in his opinion, Sheppard was not suffering from any mental disease and was not insane on January 1, 1942, and that he had the ability to distinguish between right and wrong as to the acts he committed on that day. There was no error in the admission of this testimony by a duly qualified psychiatrist who had examined Sheppard.

Sheppard's remaining assignments of error (twenty-six and twenty-seven) relate to the denial by the judge of his motion for a new trial. The motion was based on the ground of newly discovered evidence to the effect that one Silvia, who had been an inmate of the defective delinquent department and an important witness for the Commonwealth at the trial of the defendants, had been recommended for release

about three weeks after January 1, 1942, by superintendent Warren and Dr. Hanson, and that his parole was voted on February 6, 1942. Sheppard's counsel contends that "this circumstance represents an element of prejudice and persuasion unfairly exercised by the government authorities in their endeavor to obtain a conviction" of the defendant Sheppard, "which improper influence unduly and unjustly tended to affect the jury in its deliberation on the question of the innocence or guilt of . . . Sheppard."

It is settled that a motion for new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial judge. *Commonwealth* v. *Devereaux*, 257 Mass. 391, 394. *Commonwealth* v. *Sacco*, 259 Mass. 128, 139. *Commonwealth* v. *Lammi*, 310 Mass. 159, 165. The governing principles are set forth in *Davis* v. *Boston Elevated Railway*, 235 Mass. 482, 495, 496, 497. The rules there expounded are equally applicable to criminal cases. It is sufficient to say that in the present case there is nothing to show that the judge exceeded or even approached the bounds placed upon his discretion. There is nothing in *Commonwealth* v. *Green*, 17 Mass. 514, so largely relied upon by Sheppard's counsel, to support the position he takes. Indeed, in that case it is said that the power to order a new trial on such a ground "is a power to be used sparingly for the protection of innocence, not to screen the guilty" (page 550). It may be added that without the testimony of Silvia there was ample evidence to warrant the jury in finding, as they did, that Sheppard was guilty of murder in the first degree in the killing of Landry. Millard did not assign as error the denial of his motion for a new trial.

We have examined the entire record and all the contentions of the defendants in accordance with the provisions of G. L. (Ter. Ed.) c. 278, § 33E, as amended by St. 1939, c. 341, and are satisfied that justice does not require that other than the following entry should be made.

> *Orders denying motions for new trial affirmed.*
> *Judgments affirmed.*